UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ELIZABETH D. COSTIN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|    v. | )   Cause No. 1:25-cv-00023-ALT |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Frank Bisignano*,[1] *Commissioner of the Social Security Administration*, | ) ) ) ) |
| | ) |
|    Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Elizabeth D. Costin appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits (DIB). (ECF 1 at 2-3; ECF 9 Administrative Record ("AR") 23).[2] For the following reasons, the Commissioner's decision will be AFFIRMED.

**I. FACTUAL AND PROCEDURAL HISTORY**

Costin applied for DIB in October 2022, alleging disability beginning on March 15, 2022. (AR 23, 494-500). Her claim was initially denied on January 3, 2023, and upon reconsideration on April 14, 2023. (AR 23, 396, 411). On October 5, 2023, she appeared for a phone hearing before Administrative Law Judge (ALJ) Alice Blackmore. (AR 23, 44-76). Costin was joined by her non-attorney representative, Tara Budd, and a vocational expert (VE) Ginny Speelman also

---

[1] Frank Bisignano became the Commissioner of Social Security in May 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for his predecessor as the defendant in this suit. *See La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at *n.2 (S.D. Ind. May 15, 2025).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

1

appeared. (AR 23). The ALJ issued an unfavorable decision on November 15, 2023, concluding that Costin was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (AR 23-38). Costin filed a request for review by the Appeals Counsel, which denied the request on November 19, 2024 (AR 6), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Costin filed a complaint in this district court requesting review of the Commissioner's final decision on January 22, 2025. (ECF 1). In this appeal, Costin argues the ALJ made harmful errors by failing to include all supported mental limitations in the RFC. (ECF 15 at 8).

On the date of the Commissioner's final decision, Costin was forty-eight years old (*see id.* at 4) and has a high school education (*id.*). She has past relevant work as a motor vehicle assembler. (AR 36, 70; *see also* AR 515). Costin alleges disability due to cluster headaches, insomnia, PTSD, fibromyalgia, chronic fatigue, chronic pain, constipation, allergic rhinitis, white matter disease (causing severe cognitive issues), hypothyroidism, anxiety, depression, nightmares, ADHD, and a bipolar disorder. (AR 397).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d

863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

3

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. § 404.1520. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

## B. The Commissioner's Final Decision

At step one, the ALJ found that Costin had not engaged in substantially gainful activity since March 15, 2022, the alleged onset date. (AR 27). At step two, the ALJ found that Costin has the following severe impairments: "Fibromyalgia; Chronic Pain Syndrome; Lumbar Spondylosis; Chronic Migraine without Aura; Cervical Facet Arthropathy and Myalgia; Chronic Obstructive Pulmonary Disorder; and Generalized Anxiety disorder." (AR 30). The ALJ also found Costin had the following non-severe impairments: "Allergic Rhinitis; Bipolar disorder, unspecified; Major depressive disorder, recurrent; Insomnia; and Hypothyroidism." (AR 27). At step three, the ALJ found Costin does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 30).

The ALJ assigned Costin the following RFC:

the claimant has the residual functional capacity to perform light work as defined

> in 20 CFR 404.1567(b) except the individual can occasionally climb ramps and stairs, ladders, ropes, or scaffolds. The individual can occasionally stoop, kneel, crouch, and crawl. The individual can frequently balance. The individual can tolerate frequent exposure to extreme heat, extreme cold, wetness, fumes, odors, dusts, and gases. The individual can carry out simple instructions.

(AR 34).

At step four, the ALJ found Costin is unable to perform any past relevant work. (AR 36). At step five, the ALJ concluded that given Costin's age, education, experience, and RFC, she could perform a significant number of unskilled, light-exertional jobs in the national economy, including housekeeping cleaner, marker, and inspector and hand packager. (AR 37). Thus, Costin's application for DIB was denied. (*Id*.).

*C. The ALJ properly accounted for moderate limitations in concentration, persistence, or pace in assigning the RFC.*

Costin argues that the ALJ failed to adequately account for Costin's "moderate limitations" in concentration, persistence, or pace when assigning the RFC. (ECF 15 at 8). As far as the mental aspect of the RFC, the ALJ limited Costin stating, "[t]he individual can carry out simple instructions." (AR at 34).

On December 12, 2022, J. Gange, Ph.D., a state agency psychologist, reviewed Costin's record and classified mental limitation in the ability to concentrate, persist, or maintain pace as mild. (AR 399-400). A second state agency psychologist, Joelle J. Larsen, Ph.D., concluded the same on March 20, 2023. (AR 406-07). Then, at step three, the ALJ assessed Costin's mental impairment and found Costin had a *moderate* limitation in concentrating, persisting, or maintaining pace. (AR 32). The ALJ explained her departure from the state agency medical consultants saying

> Although the State Agency medical consultants determined that the claimant did not have any severe mental impairments (Ex. 2A, 3A), after considering the outpatient mental health treatment records where the claimant discussed her fluctuating anxiety symptoms, with more recent clinical findings in 2023 that

5

> sometimes described an anxious mood with poor attention and concentration, along with the claimant's testimony that she cannot concentrate and will start something else, the undersigned determined that the claimant is moderately limited in concentration, persistence, or pace (Ex. 6F, 11F, 16F).

(AR 33). This moderate limitation, the ALJ explains, is due in part to Costin's anxiety and the interplay between her anxiety and her ability to concentrate.

When accounting for Costin's moderate limitations in concentration, persistence, or pace, the ALJ's RFC included that Costin can "carry out simple instructions." (AR 34). The ALJ supports her finding by explaining

> Mentally, although the claimant testified that she has bad panic attacks, her longitudinal outpatient mental health treatment through medication management, individual therapy, and skills training did not continuously document reports from the claimant that she experienced panic attacks. However, the claimant's fluctuating anxiety that is well-established by the previously described mental health evidence, along with some findings for abnormal attention and concentration, supports reducing the claimant to simple work, as defined above, which also minimizes stressors that could induce a panic attack. The evidence does not suggest that attention or concentration deficits would continuously render the claimant excessively off-task. For example, in January 2023, she requested assistance with filing for SNAP, in February 2023 she applied to three jobs and had an open interview, and in June 2023, she told her therapist that she redirected her attention when she noticed anxious thoughts (Ex. 6F, 11F, 16F).
>
> To summarize, despite receiving fairly ongoing treatment for her physical pain and anxiety, the effects of those disorders . . . did not preclude the claimant from remaining fairly active since the alleged onset date, walking five miles, kayaking, and applying for jobs. When limited to simple light work with postural and environmental restrictions, stressors that could aggravate the claimant's symptoms are minimized, and she can perform work on a sustained basis.

(AR 35-36).

Ultimately, whether an ALJ has adequately accounted for moderate limitations in concentration, persistence, or pace must be assessed on a case-by-case basis. *See Johnson v. O'Malley*, No. 4:23-CV-39-GSL, 2024 WL 1327338, at *6 (N.D. Ind. Mar. 27, 2024) ("[C]learly, where the ALJ connects the assessed limitations to evidence supporting those limitations, even vague or generic restrictions to simple work is sufficient."). Here, the ALJ properly connected

6

the moderate limitation to evidence supporting that limitation and then connected that limitation to the RFC. When assigning the moderate limitation in the first place, the ALJ considered the interplay between Costin's anxiety and concentration, citing medical records which note "an anxious mood with poor attention and concentration." (AR 33). In assigning the RFC, the ALJ explains that she accounts for Costin's anxiety and "abnormal attention and concentration[,]" by limiting Costin to "simple instructions," which would "minimize[] stressors that could induce a panic attack." (AR 35). Because of the interplay of the anxiety on her ability to maintain concentration, persistence, or pace, and the ALJ's previous explanation and support of that interplay, the RFC limiting Costin to "simple instructions" properly accounts for her moderate limitation.

Additionally, the ALJ considered whether the moderate limitation would render Costin excessively off-task and determined it would not. (AR 35). The ALJ reasoned that Costin's ability to file for SNAP, apply for jobs, and attend an interview support a conclusion that her attention or concentration deficits would not continuously render Costin excessively off-task. (AR 35-36). The ALJ cites medical records which show Costin is able to redirect her thoughts away from anxious ones. (AR 36). These citations to Costin's medical records and abilities support the ALJ's finding that Costin's moderate limitation would not render her excessively off task when limited to "simple instructions."

"Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (collecting cases). *See, e.g., Moy v Bisignano*, 142 F.4th 546, (7th Cir. 2025) ("Perhaps the ALJ might have concluded that, despite these limitations, Moy could nonetheless stay on-task and regularly attend work in a way that

7

would not interfere with her employment. But that was not his reasoning."). Here, that is the ALJ's reasoning. *See, e.g., Pytlewski v Saul*, 791 F. App'x 611, 616 (7th Cir. 2019) ("Although we often reject the idea that a hypothetical confining the claimant to "simple routine tasks . . . adequately captures . . . and limitations in concentration, persistence, and pace, such a hypothetical may be adequate when it restricts a claimant with 'stress-or panic-related' limitations, as is the case here, given Pytlewski's recurring anxiety, to low-stress work."). Thus, the ALJ properly accounted for Costin's moderate limitations in concentration, persistence, or pace in assigning the RFC.

### D. The ALJ built a logical bridge from the evidence to the RFC conclusion.

Costin argues that the ALJ failed to build a logical bridge from the evidence to the RFC conclusion by cherry picking the record and ignoring contrary evidence when it comes to Costin's mental limitations, failing to explain the persuasiveness of mental medical opinions, and failing to request a consultative evaluation. (ECF 15 at 10-15). Contrary to Costin's assertions, the ALJ's evaluation and explanation of the evidence was proper.

1. *The ALJ built a logical bridge from the evidence to the RFC conclusion when it comes to Costin's mental limitations, evaluating that her adaption and self-management abilities were not impacted by attention and concentration abilities, and no social limitations were needed in the RFC.*

Costin claims the ALJ failed to build a logical bridge from the evidence to the mental RFC conclusion by cherry picking the record and ignoring contrary evidence. (ECF 15 at 10-12). "An ALJ need not address every piece of evidence or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). Rather, an ALJ is "subject to only the most minimal of articulation requirements." *Id.* All that is required is that the ALJ "provide an explanation for how the evidence leads to their conclusions that is

sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Id.* (citations and internal quotation marks omitted). In shorthand terms, an ALJ "needs to provide a logical bridge from the evidence to [her] conclusion." *Id.* (citation and internal quotation marks omitted). Having said that, "[t]he ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

First, Costin argues the ALJ failed to build a logical bridge and cherry picked the record as it pertains to her mental limitations. (ECF 15 at 10-12). However, the ALJ's explanation and conclusion as to deeming anxiety a severe mental impairment with the moderate limitation in concentration, persistence, and pace, reflect the ALJ's consideration of the whole record. The state agency psychologists, Dr. Gange and Dr. Larsen, concluded that Costin's anxiety was "non severe" (AR 399, 406). They both found mild limitations in Costin's ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace. (AR 399, 406). They both also found no limitation in Costin's ability to adapt or manage herself. (AR 399, 406).

However, the ALJ viewed Costin's limitations to be beyond those listed by the state agency psychologists. In coming to this conclusion, the ALJ considered the medical records from the Bowen Center and included anxiety as a severe mental impairment with the moderate limitation in concentration, persistence, and pace, surpassing the recommendations of the state agency psychologists. (AR 32). The ALJ explained,

> Although the State Agency medical consultants determined that the claimant did not have any severe mental impairments (Ex. 2A, 3A), after considering the outpatient mental health treatment records where the claimant discussed her fluctuating anxiety symptoms, with more recent clinical findings in 2023 that sometimes described an anxious mood with poor attention and concentration, along with the claimant's testimony that she cannot concentrate and will start something else, the undersigned determined that the claimant is moderately limited in concentration, persistence, or pace (Ex. 6F, 11F, 16F).

(AR 33). Although Costin's brief pulls numerous quotes from various medical records documenting Costin's reported struggles with concentration and anxiety (ECF 15 at 11-12), the ALJ did not ignore this contrary evidence. In fact, she greatly considered it. The ALJ is "subject to only the most minimal of articulation requirements." *Warnell,* 97 F.4th at 1053 (citations omitted). The ALJ's explanation with citations to the Bowen Center records, shows the ALJ articulated her consideration of contrary evidence, and it informed her decision to find greater limitations than was found by the reviewing state agency psychologists. As previously discussed, Costin's determined moderate limitation in concentration, persistence, or pace were properly accounted for in the RFC.

Second, Costin argues the ALJ fails to build a logical bridge by playing doctor and stating Costin's adaption and self-management abilities were not impacted by attention and concentration abilities. (ECF 15 at 12-13). The state agency psychologists found Costin had no limitation in her ability to adapt or manage herself. (AR 399, 406). In her decision the ALJ does state, "the claimant's adaptation and self-management abilities have not been significantly impacted by attention or concentration deficits." (AR 33-34). The ALJ then goes on to discuss instances of Costin's success in adaption and self-management such as requesting assistance filing for SNAP, applying for jobs, and attending an interview. (AR 36-37). Although Costin's brief correctly says an ALJ may not make independent medical findings (ECF 15 at 13), *Blakes ex. rel. Wolfe v. Barnhart,* 331 F.3d 565, 570 (7th Cir. 2003), that is not a correct characterization

of the ALJ's decision. Instead, the ALJ makes a statement regarding adaptation and self-management abilities which is consistent with the state agency psychologists' medical findings and connects those medical findings to observations of Costin's behavior in the record. Thus, the ALJ does not play doctor, and her conclusion is supported by the record.

Third, Costin argues the ALJ failed to build a logical bridge by failing to include social limitations in the RFC. (ECF 15 at 13). The state agency psychologists found Costin had a mild limitation in her ability to interact with others, and the ALJ agreed. (AR 399, 406, 32). Because her limitation was mild, the doctors recommended no mental limitations for the workplace. (AR 402, 409). The ALJ expressly acknowledged this, noting "the record also confirms the claimant does not have significant social limitations . . . ." (AR 34). Although Costin points to various quotes from her in medical records and her testimony about her social issues, Costin's brief does not point to a doctor's recommendation or the like in terms of Costin's social ability. (ECF 15 at 13); *see Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability"); *see Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019) ("[I]t is unclear what kinds of work restrictions might address [claimant's] limitations . . . because he hypothesizes none" and "the medical record does not support any.") Thus, the ALJ's reliance on the available doctors' opinions and Costin's behavior on the record demonstrates the appropriate logical bridge to a lack of social limitations in the RFC.

  2. *The ALJ sufficiently explained the persuasiveness of the mental medical opinions as required by 20 C.F.R. § 404.1520c.*

Costin argues the ALJ failed to explain how persuasive the ALJ found any of the mental medical opinions in the record, as required by the regulations. (ECF 15 at 12-15). An ALJ "must explain 'how persuasive she finds all of the medical opinions and all of the prior administrative

11

medical findings in a claimant's case record.'" *Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-CV178 JD, 2022 WL 2384031, *3 (N.D. Ind. June 30, 2022) (brackets omitted) (quoting 20 C.F.R. § 404.1520c(b)). However, in this case, the ALJ sufficiently explained the persuasiveness of the mental medical opinions.

Examining the record, both mental health opinions of record found that Costin's mental limitations were non-severe. (AR 400, 407). Therefore, there are no other medical source opinions that offer mental limitations for the ALJ to discuss and a remand would serve no purpose. Further, Costin does not identify what mental health opinion the ALJ failed to evaluate under § 404.1520c. While Costin was treated at the Bowen Center, there is no medical source statement from them. *See* 20 C.F.R. § 404.1545(3) ("We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."). Accordingly, the ALJ sufficiently explained the persuasiveness of the two mental medical opinions of record as required by § 404.1520c, and no more is expected of the ALJ.

> 3. *The ALJ was not obligated to request a consultative evaluation for Costin's mental limitations.*

Costin argues the ALJ should have requested a consultative evaluation to remedy a lack of sufficient evidence to determine an RFC for Costin's mental limitations. (ECF 15 at 15). "An ALJ has a duty to fully and fairly develop the record. However, the Seventh Circuit generally defers to the ALJ's judgment on the quantity of evidence needed to develop the record." *Carroll v. Barnhart*, 291 F. Supp. 2d 783, 795 (N.D. Ill. 2003) (citations omitted).

In *Hofer v. Astrue*, the court found that "[b]ecause there was sufficient evidence in the record from which the administrative law judge could determine plaintiff's residual functional capacity, it was unnecessary for him to order a consultative examination." 588 F. Supp. 2d 952,

12

963 (W.D. Wis. 2008). In this case, the state agency psychologists evaluated Costin's mental limitations and did not recommend a mental RFC since those mental limitations were found to be non-severe. (AR 400, 407). Despite this, the ALJ included mental limitations in the RFC. (AR 34). Although Costin may not like the extent of the RFC and the ALJ's conclusion, Costin fails to point to a "doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ." *Gedatus*, 994 F.3d at 903. Thus, because the there was sufficient evidence in the record to determine Costin's RFC and the Seventh Circuit generally defers to the ALJ's judgment on the quantity of evidence needed to develop the record, the ALJ did not err.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Costin.

SO ORDERED.

Entered this 3rd day of December 2025.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge